# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ACIE ROBINSON**                                                      **CIVIL ACTION**

**VERSUS**                                                              **NO.  14-1530**

**CAROLYN W. COLVIN, ACTING COMMISSIONER**    **SECTION: "G"(1)**
**SOCIAL SECURITY ADMINISTRATION**

## ORDER AND REASONS

Before the Court are Plaintiff Acie Robinson's ("Plaintiff") objections[1] to the April 14, 2015

Report and Recommendation of the United States Magistrate Judge assigned to the case.[2]  Plaintiff

filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of Defendant the

Acting Commissioner of the Social Security Administration (the "Commissioner" or "Defendant")

denying his claim for disability insurance benefits ("DBI") under Title II of the Social Security Act

(the "Act").[3] The parties filed cross-motions for summary judgment.[4] The Magistrate Judge

recommended that Plaintiff's motion for summary judgment be denied and the Commissioner's

cross-motion be granted.[5] Plaintiff objects, requesting that the Court reject the Magistrate Judge's

recommendation, and that the Court order the Commissioner to grant benefits or, alternatively,

remand the case to the Administrative Law Judge ("ALJ") for a new hearing.[6] Having considered

Plaintiff's objections, the cross motions for summary judgment, the Magistrate Judge's Report and

---

[1] Rec. Doc. 14.

[2] Rec. Doc. 13.

[3] Rec. Doc. 1.

[4] Rec. Docs. 11 and 12.

[5] Rec. Doc. 13 at 40.

[6] Rec. Doc. 14 at 9.

Recommendation, the record, and the applicable law, for the following reasons the Court will sustain Plaintiff's objections, reject the Magistrate Judge's Report and Recommendation and remand this to the ALJ.

## I. Background

### A.    *Procedural History*

On July 24, 2013, Plaintiff filed an application for DBI, alleging a disability onset date of March 31, 2010.[7] Plaintiff reported the following disabling conditions: post traumatic stress disorder ("PTSD"), a "mental condition," neck problems, back problems, osteoarthritis, and knee problems.[8] After his claims were denied at the agency level, Plaintiff requested a hearing before an ALJ, which was held on February 19, 2014.[9] Participating were Plaintiff and Casey Suggs, a vocational expert.[10]

On March 25, 2014, the ALJ issued a decision denying Plaintiff's applications for benefits.[11] The ALJ analyzed Plaintiff's claim pursuant to the five-step sequential evaluation process.[12] At step

---

[7] Adm. Rec. at 129–30.

[8] *Id*. at 151.

[9] *Id*. at 34–75.

[10] *Id*.

[11] *Id*. at 8–33.

[12] The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since March 31, 2010.[13] At step two, the ALJ concluded that Plaintiff has the following severe impairments: "cervical radiculopathy and degenerative disc disease; right knee arthritis; left knee arthritis; bilateral carpal tunnel syndrome; depression; and post-traumatic stress disorder."[14] At step three, the ALJ held that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments under the regulations.[15]

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work "except with frequent bilateral fingering, feeling, and handling; occasional bilateral overhead reaching; simple, routine tasks; and occasional interaction with supervisors, coworkers, and the public."[16]  At step four, the ALJ also found that Plaintiff was unable to perform any past relevant work.[17] However, at step five, the ALJ determined that given Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the

---

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id.* §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled. *Id.* §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id.* § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969.

[13] Adm. Rec. at 13.

[14] *Id.*

[15] *Id.* at 14.

[16] *Id.* at 16.

[17] *Id.* at 26.

national economy that he could perform.[18] Therefore, the ALJ determined that Plaintiff was not under a disability from March 31, 2010, through the date of the decision.[19]

Plaintiff requested review by the Appeals Council.[20] The ALJ's decision became the final decision of the Commissioner for purposes of this Court's review after the Appeals Council denied review on May 6, 2014.[21] On July 2, 2014, Plaintiff filed a complaint seeking judicial review pursuant to Section 405(g) of the Act,[22] and this matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B). On September 8, 2014, the Commissioner answered the complaint.[23]

On October 11, 2014, Plaintiff filed a motion for summary judgment and memorandum in support.[24] Plaintiff raised three issues in his motion for summary judgment: (1) the ALJ's finding that Plaintiff could perform frequent bilateral fingering, feeling and handling is contrary to evidence of record;[25] (2) the ALJ found that Plaintiff could perform light work, which requires standing and/or walking for six hours, when the objective evidence establishes that he has severe limitations in his range of motion of both knees, limiting his standing and walking;[26] and (3) substantial evidence does

---

[18] *Id.*

[19] *Id.* at 27.

[20] *Id.* at 6.

[21] *Id.* at 1–5.

[22] Rec. Doc. 1.

[23] Rec. Doc. 8.

[24] Rec. Doc. 11.

[25] Rec. Doc. 11-2 at 19–21.

[26] *Id.* at 21.

not support the ALJ's mental RFC assessment.[27] On December 4, 2014, the Commissioner filed a cross-motion for summary judgment and memorandum in support, arguing that substantial evidence supports the ALJ's RFC determinations.[28]

## B.    *Report and Recommendation Findings*

The Magistrate Judge issued her Report and Recommendation on March 2, 2015.[29] The Magistrate Judge provided a detailed summary of the testimony given at the February 19, 2014 hearing.[30] She also provided a detailed summary of the medical evidence presented to the ALJ.[31]

### 1.    **The ALJ's Finding that Plaintiff Could Perform Frequent Bilateral Fingering, Feeling and Handling**

The Magistrate Judge first addressed Plaintiff's argument that the ALJ's finding that Plaintiff could perform frequent bilateral fingering, feeling and handling was contrary to the evidence of record.[32] She noted that Plaintiff testified that "sometimes he could barely write" due to carpal tunnel syndrome.[33] The Magistrate Judge found the examinations of Drs. Dijamco, Lan Tran, Gaines and Burris relevant to this issue.[34] She noted that Plaintiff's argument was based on the reports of Drs. Lan Tran, Gaines and Burris.[35] However, the Magistrate Judge noted that Plaintiff ignored Dr.

---

[27] *Id.* at 22–25.

[28] Rec. Doc. 12.

[29] Rec. Doc. 17.

[30] *Id.* at 6–8.

[31] *Id.* at 8–23.

[32] *Id.* at 24.

[33] *Id.* (citing Adm. Rec. at 47).

[34] *Id.*

[35] *Id.* at 27.

Dijamco's report, finding that Plaintiff's physical examination was essentially unremarkable with no clinical findings to correlate Plaintiff's allegations.[36] The Magistrate Judge cited *Muse v. Sullivan*, where the Fifth Circuit stated that "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."[37] She found that the ALJ's decision to give greater weight to the opinion of Dr. Dijamco was supported by substantial evidence.[38]

The Magistrate Judge found Dr. Lan Tran's conclusions inconsistent with those of Drs. Gaines and Burris.[39] She noted that Dr. Lan Tran found inconsistencies between Plaintiff's "subjective report of neuropathic symptoms bilaterally in his arms and her findings that sensation and strength were intact in the upper extremities bilaterally," while Drs. Gaines and Burris accepted Plaintiff's subjective complaints and reports of his limitations.[40] Moreover, the Magistrate Judge noted that Dr. Burris found no muscle atrophy and normal deep tendon reflexes, and Dr. Gaines found no localized pain on palpation at either wrist and muscle strength was normal.[41] Accordingly, the ALJ found that there was substantial evidence to support the ALJ's finding that Plaintiff had a residual functional capacity to perform light work except with frequent bilateral fingering, feeling, and handling.[42]

---

[36] *Id.* (citing Adm. Rec. at 463).

[37] *Id.* (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 2000).

[38] *Id.* at 27–28.

[39] *Id.* at 28.

[40] *Id.*

[41] *Id.* (citing Adm. Rec. at 958, 902–03).

[42] *Id.* at 29.

6

**2.      The ALJ's Finding that Plaintiff Could Perform the Standing and Walking Requirements of Light Work**

Turning to Plaintiff's second argument, the Magistrate Judge found substantial evidence to support the ALJ's finding that Plaintiff could perform the standing and walking requirements of light work.[43] She noted that Plaintiff was diagnosed with a meniscus tear in the left knee and osteoarthritis in the right knee in 2008.[44] She also noted that on December 16, 2013, Dr. Gaines found that Plaintiff's knee condition impacted his ability to work and prevented him from performing prolonged standing and lifting activities.[45] According to the Magistrate Judge, Dr. Lan Tran found that Plaintiff had a full range of motion in the lower extremities with normal muscle strength bilateraly, and Dr. Dijamco found the passive range of motion of both Plaintiff's joints and extremities within functional limits.[46] Accordingly, the Magistrate Judge found that there was substantial evidence to support the ALJ's finding that Plaintiff could perform the standing and walking requirements for light work.[47]

**3.      The ALJ's Mental RFC Assessment**

Finally, the Magistrate Judge addressed Plaintiff's argument that substantial evidence did not support the ALJ's mental RFC assessment, which found that Plaintiff was limited to simple and routine tasks and occasional interaction with supervisors, coworkers and the public.[48] The Magistrate

---

[43] *Id.* at 29–30.

[44] *Id.* at 29 (citing Adm. Rec. at 882).

[45] *Id.* (citing Adm. Rec. at 888–89).

[46] *Id.* (citing Adm. Rec. at 968, 463).

[47] *Id.* at 30.

[48] *Id.* (citing Adm. Rec. at 15).

Judge acknowledged that the ALJ's decision incorrectly noted that prior to mid-2013 Plaintiff had not been prescribed any psychotropic medication, which was incorrect because Plaintiff was prescribed Effexor, an anti-depressant, on September 21, 2012.[49] Although this statement was incorrect, the Magistrate Judge noted that "the mental RFC was based on other factors including the minimal counseling prior to mid-2013, the absence of complaints of traumatic events in the Navy prior to mid-2013, and [Global Assessment of Functioning] GAF scores of 60-65."[50] Accordingly, the Magistrate Judge found that Plaintiff's substantial rights were not affected by the ALJ's error concerning the timing of when Plaintiff began taking psychotropic medication.[51]

The Magistrate Judge also noted that the ALJ's decision incorrectly stated that an administrative assistant completed a disability benefits questionnaire concerning Plaintiff's PTSD diagnosis, when in fact the questionnaire was completed by Dr. Dralle.[52] The ALJ noted that "[b]ased on the entire record, even if the mental health opinion was considered to be the opinion of a treating physician . . . it is given little weight as being inconsistent with and unsupported by the balance of the objective evidence."[53] According to the Magistrate Judge, because the ALJ theoretically treated the report as the opinion of a treating psychologist, the ALJ's error in identifying it as prepared by an administrative assistant did not affect Plaintiff's substantial rights.[54] The Magistrate Judge also rejected Plaintiff's argument that the ALJ failed to consider the

---

[49] *Id.* (citing Adm. Rec. at 14, 392–93).

[50] *Id.* at 31.

[51] *Id.*

[52] *Id.*

[53] *Id.* (citing Adm. Rec. at 24).

[54] *Id.* at 32.

evaluations by Drs. Russell and Dralle and the Plaintiff's experiencing traumatic events.[55]

According to the Magistrate Judge, Dr. Hansen, a psychologist, performed a mental status examination of Plaintiff on December 7, 2013, at the request of the Disability Determinations Service.[56] Dr. Hansen also administered a Rey 15 test to measure effort, and determined that the score Plaintiff received was indicative of inadequate effort.[57] Plaintiff argued that the ALJ should not have considered the Rey 15 test because the Social Security Administration prohibits the consideration of malingering tests.[58] According to the Magistrate Judge, "the ALJ's decision demonstrates that he did not determine [Plaintiff's] mental RFC based on the results of the Rey 15 test."[59] Instead, the Magistrate Judge asserts that the ALJ relied on the following:

> (1) how the mental status examinations and the lack of aggressive mental health treatment attempts contradict [Plaintiff's] assertions of marked PTSD and depression symptoms; (2) the relatively unremarkable mental and physical examinations and drug treatment; (3) the weight given to the VA progress notes and the reports of the consultative examiners; (4) the little weight given to the opinions of Drs. Burris, Dralle and Russell; and (5) the lack of credibility concerning [Plaintiff's] alleged limitations.[60]

The Magistrate Judge found that the ALJ's description of the mental status exams as "relatively unremarkable" emphasized the examinations made after June 2013.[61] The Magistrate

---

[55] *Id.*

[56] *Id.*

[57] *Id.* at 32–33.

[58] *Id.* at 33.

[59] *Id.*

[60] *Id.* at 33–34 (citing Adm. Rec. at 24–25).

[61] *Id.* at 34.

Judge opined that the term "relatively unremarkable" is inexact.[62] She noted that there were no abnormalities reported at the December 20, 2013 examination which was the last mental status examination before the administrative hearing.[63] Accordingly, she found that the ALJ's description of the mental status examinations performed after June 3, 2013 as "relatively unremarkable" did not demonstrate a misstatement of the evidence or a lack of substantial evidence for the mental portion of the RFC.[64]

The Magistrate Judge found that there was substantial evidence to support the ALJ's credibility determination.[65] She noted that the ALJ pointed to the following evidence of Plaintiff's social functioning: "he lived alone; he shopped for groceries as needed; he visited with friends two to three times per week; he saw his girlfriend on the weekends; he visited his mother regularly; and, while he spent most of his time watching television or sleeping, he exercised by riding his bicycle or walking."[66]

The Magistrate Judge noted that the ALJ found: "(1) medical evidence supported that [Plaintiff] was diagnosed with impairments including depression and PTSD; (2) the impairments could reasonably be expected to cause [Plaintiff's] alleged symptoms; (3) the impairments could reasonably cause certain mental limitations consistent with those in the RFC; (4) [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms were not

---

[62] *Id.* at 36.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* (citing Adm. Rec. at 41–42, 57–58, 62–64).

entirely credible."[67] After reviewing the evidence, the Magistrate Judge found that substantial evidence supported the mental RFC determination.[68]

## II. Objections

### A.     *Plaintiff's Objections*

Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on April 24, 2015.[69] He asserts that the Magistrate Judge "failed to properly apply the substantial evidence standard by improperly finding that the ALJ's incorrect factual finding was a 'harmless' procedural error and failing to fairly account for evidence detracting from the substantiality of the evidence supporting the Commissioner's decision."[70] Plaintiff contends that the Magistrate Judge's reliance on *Mays v. Bowen* was improper here.[71] According to Plaintiff, "*Mays* is inapposite because it is not about whether substantial evidence supports and ALJ's factual finding."[72] Plaintiff asserts that, unlike *Mays*, this case is not about a procedural error.[73] Plaintiff contends that "[t]he issue here is whether substantial evidence supports the factual findings upon which the ALJ based his RFC assessment."[74] "Because the Commissioner acknowledges, and the Magistrate concludes, that the decision contains an incorrect factual finding," Plaintiff asserts that "the RFC that is based on that

---

[67] *Id.* at 37.

[68] *Id.* at 37–40.

[69] Rec. Doc. 14.

[70] *Id.* at 1.

[71] *Id.* at 2.

[72] *Id.*

[73] *Id.* at 3.

[74] *Id.*

finding is not supported by substantial evidence."[75] Accordingly, she contends that the decision must be reversed.[76]

According to Plaintiff, "[t]he Magistrate acknowledges the ALJ's incorrect factual finding (that Robinson was not prescribed psychotropic medication until June 2013), then reasons that because the ALJ's RFC was based on factors other than the ALJ's incorrect factual finding, 'Robinson's substantial rights were not affected by the ALJ's error concerning the timing of the psychotropic medication.'"[77] Plaintiff asserts that this conclusion required the Magistrate Judge "to assume that the ALJ would have reached the same findings as to the severity of [Plaintiff's] Post-Traumatic Stress Disorder (PTSD) and his mental limitations, had the ALJ been aware of the fact that [Plaintiff] was taking psychotropic medications prior to June 2013."[78] Because the ALJ did not actually weigh the fact that Plaintiff was taking psychotropic medication prior to June 2013, Plaintiff contends that the Magistrate Judge's "conclusion that the other 'correct' findings are sufficient to support the ALJ's decision is an improper weighing of the evidence and substitution of the Court's judgment for that of the Commissioner."[79]

Plaintiff argues that the ALJ incorrectly characterized him "as not having any marked mental symptoms prior to June 2013, incorrectly attributed his June 2013 'episode' to excessive drinking, and incorrectly characterized his report of symptoms of PTSD as not occurring until after the June

---

[75] *Id.*

[76] *Id.*

[77] *Id.* (citing Rec. Doc. 13 at 31).

[78] *Id.* at 3–4.

[79] *Id.* at 4 (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)).

2013 hospitalization."[80] He contends that the ALJ also incorrectly described him as merely experiencing death and injury to others while in the Navy.[81] According to Plaintiff, the record establishes that his "PTSD related not only to his close proximity to death and injury of others, but also to his own near death experiences."[82] Plaintiff asserts that "[t]he ALJ fail[ed] to recognize that [Plaintiff's] June 2013 hospitalization for homicidal and suicidal ideation was preceded by nearly a year of psychiatric and psychological treatment."[83] He argues that the Magistrate Judge incorrectly applied the harmless error standard to the ALJ's incorrect finding that the opinion of psychologist Dr. Dralle was rendered by a patient service assistant.[84] Plaintiff contends that "by failing to properly identify Dr. Dralle's opinion as the opinion of a psychologist, the ALJ failed to correctly apply the 20 C.F.R. § 404.1527(c) factors in weighing the opinion, requiring reversal."[85]

Plaintiff notes that the ALJ found his mental status examinations "relatively unremarkable."[86] He asserts that "[e]very mental status examination of record, except the single examination relied on by the ALJ, contains varying abnormalities such as circumstantial thought process, speaking with a flat pitch and slow rate, brief/little responsiveness, depressed affect, sad affect, flat affect, serious affect, constricted affect, sullen affect, depressed mood, dysphoric mood, anxious mood, fair eye

---

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] *Id.* at 5.

[84] *Id.*

[85] *Id.*

[86] *Id.* at 7.

contact, fair judgment, and fair insight."[87] He notes that Dr. Russell reported difficulty having Plaintiff discuss his traumatic experiences.[88] According to Plaintiff, the ALJ and the Magistrate Judge failed to acknowledge that the mental status examinations provided objective support to the credibility of his statements regarding the limitations caused by his PTSD.[89] Plaintiff contends that the Magistrate Judge's discussion of his mental RFC is largely limited to the issue of social functioning, while his arguments regarding his mental RFC relate to his limitations in remaining on task and persisting during the workday.[90]

Finally, Plaintiff argues that "[t]he Magistrate's treatment of [his] physical problems is equally improper."[91] He asserts that the ALJ mischaracterized the record, finding that specific exhibits did not contain objective evidence when in fact they did.[92] He asserts that "[t]he report of Dr. Dijamco, who examined [Plaintiff] on a sole occasion and made a conclusory statement that his examination findings did not support [Plaintiff's] allegations, cannot be accepted as outweighing the abundance of objective medical evidence ignored by the ALJ and the medical opinions of every other physician who treated or examined [Plaintiff] and offered more detailed opinions about his functional abilities."[93] He contends that the Magistrate Judge failed to fairly account for the evidence

---

[87] *Id.* (citing Adm. Rec. at 256, 315, 392, 575–76, 579, 583, 598, 745, 747, 758, 835–36).

[88] *Id.* (citing Adm. Rec. at 579, 583).

[89] *Id.* at 8.

[90] *Id.*

[91] *Id.*

[92] *Id.*

[93] *Id.* at 8–9 (citing 20 C.F.R. § 404.1527(c)).

detracting from the substantiality of the evidence supporting the ALJ's findings.[94]

**B.      The Commissioner's Response**

The Commissioner did not file a brief in opposition to Plaintiff's objections despite receiving electronic notice of the filing posted on April 24, 2015.

### III. Standard of Review

**A.      Review of the Magistrate Judge's Report and Recommendation**

In accordance with Local Rule 73.2, this case was referred to the Magistrate Judge to provide a Report and Recommendation. A district judge "may accept, reject, or modify the recommended disposition" of a magistrate judge on a dispositive matter.[95]  The district judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to." A district court's review is limited to plain error of parts of the report which are not properly objected to.[96]

**B.      Standard of Review of Commissioner's Final Decision on DIB Benefits**

Under 42 U.S.C. § 405(g) the district court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[97] Appellate review of the Commissioner's denial of DIB benefits[98] is limited to determining whether the decision is supported by substantial evidence in the

---

[94] *Id.* at 9.

[95] FED. R. CIV. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[96] *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[97] 42 U.S.C. § 405(g).

[98] The relevant law and regulations governing a claim for DIB are identical to those governing a claim for supplemental security income ("SSI"). *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1382 n. 3 (5th Cir. 1988).

record and whether the proper legal standards were used in evaluating the evidence.[99] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[100] The Court must review the whole record to determine if such evidence exists.[101] However, the district court cannot "reweigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's."[102] The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.[103] A court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history."

The Court notes that both Plaintiff and the Commissioner moved for summary judgment. The standard of review applicable to such motions requires that a moving party establish that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law.[104] Under 42 U.S.C. § 405(g), however, this Court may examine only the pleadings and the record relied upon by the ALJ. Thus, there cannot generally be a disputed issue of fact before the

---

[99] *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Waters v. Barnhart*, 276 F.3d 716, 716 (5th Cir. 2002); *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).

[100] *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Perez*, 415 F.3d at 461; *Loza*, 219 F.3d at 393; *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)).

[101] *Singletary v. Bowen*, 798 F.2d 818, 822-23 (5th Cir. 1986).

[102] *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).

[103] *See Arkansas v. Oklahoma*, 503 U.S. 91 (1992).

[104] FED. R. CIV. P. 56(c).

Court in Social Security appeals.[105] Instead, "[t]he issue is whether the action of the Secretary is supported by the Record."[106] The Fifth Circuit has regularly allowed district courts to rule on Social Security disputes through the summary judgment procedure, when "the district court has adequately reviewed the record and based its judgment on a finding of substantial evidence in the administrative record."[107]

## IV. Law and Analysis

### A.    *Law Applicable to Qualification for DIB*

To be considered disabled, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[108] The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.[109] The regulations include a five-step evaluation process for determining whether an impairment constitutes a disability, and the five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.[110] The claimant has the burden of proof under the first four parts of the inquiry, and if he successfully carries this burden, the burden shifts to the Commissioner at step

---

[105] *See Lovett v. Schweiker*, 667 F.2d 1, 2 (5th Cir. 1981).

[106] *Id.* (citing *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977)).

[107] *Id.*; *see also, e.g.*, *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (setting forth both the summary judgment and substantial evidence standards of review).

[108] 42 U.S.C. § 423(d)(1)(A).

[109] 20 C.F.R. §§ 404.1501 to 404.1599 & Apps., §§ 416.901 to 416.998 (2008).

[110] *Id.* §§ 404.1520, 416.920; *Perez*, 415 F.3d at 461.

five to show that the claimant is capable of engaging in alternative substantial gainful employment, which is available in the national economy.[111]

In the instant case, the ALJ found that Plaintiff's cervical radiculopathy and degenerative disc disease, right knee arthritis, left knee arthritis, bilateral carpal tunnel syndrome, depression, and post-traumatic stress disorder were severe conditions within the meaning of the Act.[112] The ALJ found that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments under the regulations.[113] The ALJ found that Plaintiff had the RFC to perform light work "except with frequent bilateral fingering, feeling, and handling; occasional bilateral overhead reaching; simple, routine tasks; and occasional interaction with supervisors, coworkers, and the public."[114] The ALJ concluded that Plaintiff could not perform his past relevant work, but that jobs exist in significant numbers in the national economy that Plaintiff could perform.[115] Accordingly, the ALJ concluded that Plaintiff was not disabled.[116] The Court may disturb that finding only if the ALJ lacked "substantial evidence" to support it.[117]

## B.    *The ALJ's Mental RFC Determination*

As noted above, the ALJ found that Plaintiff had severe depression and PTSD. In determining Plaintiff's RFC, the ALJ found that Plaintiff's mental conditions limited him to

---

[111] *Perez*, 415 F.3d at 461; *Newton*, 209 F.3d at 453.

[112] Adm. Rec. at 13.

[113] *Id*. at 14.

[114] *Id.* at 16.

[115] *Id*. at 26.

[116] *Id*. at 27.

[117] *See  Perez*, 415 F.3d at 461

performance of simple and routine tasks, and to occasional interaction with supervisors, coworkers, and the public.  Plaintiff asserts that substantial evidence does not support this finding.

Plaintiff relies heavily on the ALJ's incorrect factual finding that Plaintiff was not prescribed psychotropic medication prior to June 2013.[118] This finding was incorrect because Plaintiff was prescribed Effexor, an anti-depressant, on September 21, 2012.[119] The Fifth Circuit instructs that "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[120] Therefore, the ALJ erred in failing to consider the fact that Plaintiff was prescribed Effexor on September 21, 2012.

The Magistrate Judge, relying on the Fifth Circuit's decision in *Mays v. Bowen*, found that this error was harmless. There, the Fifth Circuit held that "[p]rocedural perfection in administrative proceedings is not required' as long as 'the substantial rights of a party have not been affected.'"[121] The Magistrate Judge found that Plaintiff's substantial rights were not affected by the ALJ's error because "the mental RFC was based on other factors including the minimal counseling prior to mid-2013, the absence of complaints of traumatic events in the Navy prior to mid-2013, and [Global Assessment of Functioning] GAF scores of 60-65."[122]

Plaintiff objects to this determination. He contends that the Magistrate Judge's reliance on *Mays* was improper here.[123] He contends that his case is about whether substantial evidence supports

---

[118] Adm. Rec. at 14, 392–93.

[119] *Id.* at 392–93.

[120] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

[121] *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988)).

[122] Rec. Doc. 13 at 31.

[123] Rec. Doc. 14 at 2.

the factual findings upon which the ALJ based his RFC assessment, not whether the ALJ committed a procedural error.[124] Because the ALJ did not actually weigh the fact that Plaintiff was taking psychotropic medication prior to June 2013, Plaintiff contends that the Magistrate Judge's "conclusion that the other 'correct' findings are sufficient to support the ALJ's decision is an improper weighing of the evidence and substitution of the Court's judgment for that of the Commissioner."[125]

While this Court may not "reweigh the evidence or substitute its judgment for that of the administrative fact finder,"[126] the Fifth Circuit has applied the harmless error standard where the ALJ misstated the medical evidence. In *Brunson v. Astrue*, "the ALJ misstated the record when he stated that it contained no evidence of any ongoing psychiatric treatment and no evidence that Mr. Brunson was ever prescribed medication during the period in question."[127] The Fifth Circuit held that the error was harmless because "the record indicate[d] that Mr. Brunson took anti-depressant medication which controlled his symptoms of depression during the relevant time period," and "impairments that reasonably can be remedied or controlled by medication or treatment are not disabling."[128] Accordingly, the Fifth Circuit found that "it would not be appropriate . . . to remand the case for the purpose of having the ALJ correct this misstatement."[129]

Here, the ALJ erred in failing to consider the fact that Plaintiff was prescribed psychotropic

---

[124] *Id.* at 3.

[125] *Id.* at 4 (citing *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985)).

[126] *Cook*, 750 F.2d at 392.

[127] 387 F. App'x 459, 461 (5th Cir. 2010).

[128] *Id.* (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)).

[129] *Id.*

medication on September 21, 2012. Plaintiff was admitted to Lallie Kemp Hospital on June 3, 2013, with homicidal and suicidal ideation.[130] Plaintiff was then diagnosed with PTSD on June 17, 2013.[131] This Court cannot state that the ALJ's failure to consider the fact that Plaintiff was prescribed psychotropic medication almost nine months before his hospitalization and PTSD diagnoses was harmless. This case is distinguishable from *Brunson*, where the individual's depression was controlled by his anti-depressant medication and it was clear from the record that the individual's depression was not disabling. Plaintiff was taking psychotropic medication almost nine months before his PTSD diagnosis, and it appears that the medication was not controlling his condition. Accordingly, the Court finds that the ALJ's failure to consider this evidence substantially affected Plaintiff's rights.[132]

Moreover, the ALJ also mischaracterized the December 6, 2013 disability benefits questionnaire completed by Dr. Penelope Dralle, a psychologist.[133] The report was electronically signed by Dr. Dralle.[134] On the next page of the record, an administrative note regarding Plaintiff's treatment was signed by Ms. Pollard, an administrative assistant.[135] The ALJ's decision incorrectly states that Ms. Pollard completed the disability benefits questionnaire.[136]

The Magistrate Judge found that this error was harmless because the ALJ noted that "[b]ased

---

[130] Adm. Rec. at 612–14, 687, 812.

[131] *Id.* at 524–38, 584–97, 698–711.

[132] *See Mays*, 837 F.2d at 1364.

[133] Adm. Rec. at 970–72.

[134] *Id.* at 972.

[135] *Id.*

[136] *Id.* at 24.

on the entire record, even if the mental health opinion was considered to be the opinion of a treating physician . . . it is given little weight as being inconsistent with and unsupported by the balance of the objective evidence."[137] According to the Magistrate Judge, because the ALJ theoretically treated the report as the opinion of a treating psychologist, the ALJ's error in identifying it as prepared by an administrative assistant did not affect Plaintiff's substantial rights.[138] Plaintiff objects to this finding, arguing that "by failing to properly identify Dr. Dralle's opinion as the opinion of a psychologist, the ALJ failed to correctly apply the 20 C.F.R. § 404.1527(c) factors in weighing the opinion, requiring reversal."[139]

Although not conclusive, an evaluation by the claimant's treating physician should be accorded great weight.[140] "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'"[141] "[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."[142] However, "it is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[143]   20 C.F.R. § 404.1527(c) provides a list of factors that the ALJ should consider in determining whether to give a treating

---

[137] Rec. Doc. 13 at 31 (citing Adm. Rec. at 24).

[138] *Id.* at 32.

[139] Rec. Doc. 14 at 5.

[140] *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994).

[141] *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)).

[142] *Id.*; *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987) (citation omitted).

[143] *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

source controlling weight, including: (1) the "length of the treatment relationship and the frequency of examination"; (2) the "nature and extent of the treatment relationship"; (3) the "relevant evidence" the medical source presented to support the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the medical source; and (6) any other factors that "tend to support or contradict the opinion."

As noted above, the ALJ stated that even if the opinion were that of a treating physician he would give it little weight. The ALJ noted that this opinion "appear[ed] to stress [Plaintiff's] subjective assertions, but fail[ed] to discuss his relatively unremarkable mental status examinations throughout the relevant period."[144] The ALJ also noted that the opinion relied upon Plaintiff's inability to work due to binge drinking, but did not address Plaintiff's refusal to participate in substance abuse treatment.[145] However, the ALJ's opinion does not address the fact that Dr. Dralle had been treating Plaintiff since at least June 16, 2013, almost six months before completing this report or the other factors set forth at 20 C.F.R. § 404.1527(c) for determining whether to give a treating physician's opinion controlling weight.

While it is not permitted to reweigh the evidence, the Court finds that the ALJ's misstatements of the evidence substantially affected Plaintiff's rights. Accordingly, the Court will sustain Plaintiff's objection, and will remand to the ALJ pursuant to 42 U.S.C. § 405(g) for a new hearing and more adequate consideration of the record.[146]

---

[144] Adm. Rec. at 24.

[145] *Id.*

[146] Because the Court finds that remand is appropriate on this basis, it need not reach Plaintiff's arguments that the ALJ also erred in determining his physical RFC.

## V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Court **SUSTAINS** Plaintiff's objections as to the ALJ's mental RFC determination, and **REJECTS** the Magistrate Judge's recommendation on those issues;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the ALJ pursuant to 42 U.S.C. § 405(g) for a new hearing consistent with this Court's Order and Reasons.

**NEW ORLEANS, LOUISIANA,** this 28th day of September, 2015.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**